Filed 10/20/22  P. v. Meza CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060629 |
| v. | (Super. Ct. No. 18NF1765) |
| JOSE GABRIEL MEZA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Scott A. Steiner, Judge.  Affirmed.

John F. Schuck for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Andrew S. Mestman, and Elizabeth M. Kuchar, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Jose Gabriel Meza appeals from the judgment of conviction entered after he pleaded guilty to one count of grand theft, and a jury found him guilty of resisting a peace officer, resisting an executive officer by force and violence, and evading a peace officer while driving recklessly.  Meza contends his conviction for resisting a peace officer in violation of Penal Code section 148, subdivision (a)(1)[1] must be reversed because it is a lesser included offense of his conviction for resisting an executive officer by force and violence in violation of section 69.  He also argues the jury was given improper instructions as to those offenses and his counsel was ineffective by not objecting to them.

We affirm.  A conviction for violating section 148, subdivision (a)(1), is not a lesser included offense of a violation of section 69 under the statutory elements test.  It is of no moment that the former offense might be a lesser included offense of the latter offense under the accusatory pleading test because the multiple convictions bar only applies to lesser included offenses determined by the statutory elements test.  In addition, the trial court did not err by instructing the jury with CALCRIM Nos. 2656, 2652, and 2670 because those instructions contain correct statements of law and were responsive to the evidence presented at trial.  For the same reasons, Meza's counsel was not ineffective by failing to object to those instructions at trial.

FACTS

Around 2:50 a.m., on March 25, 2018, Isabel S. was working alone at a gas station in Anaheim when she received a phone call.  The caller told Isabel that they lost their phone "on pump no. 6" and asked her if she could see if the phone was there.  Isabel

---

[1]  All further statutory references are to the Penal Code unless otherwise specified.

could not see from inside the gas station store because the lights by the pump were dim, so she stayed on the phone with the caller and stepped outside to check the pump.

While outside, a man she had never seen before ran into the store and went behind the cash register. Isabel hung up the phone with the caller and called 911.

Isabel was trying to wave down a passing motorist for help when a white truck appeared driven by a man Isabel later identified as Meza; Isabel had never seen Meza before. She asked Meza for help. Meza asked her if the person inside the store had a gun; Isabel told him she did not know.

Isabel went back to the store and put her foot up against the front door to stop the man who had run inside from escaping. The man unsuccessfully pushed against the door to try to open it; Isabel saw he was holding a bag full of cigarette cartons. The door to the store stayed closed with the man inside until Meza approached Isabel and used his foot to move Isabel's foot away from blocking the door.

Isabel saw the man exit the store, both the man and Meza get into the white truck, and Meza drive the truck away. Isabel remained on the phone with 911 as the two men drove off and told the dispatcher the direction in which they were headed.

At approximately 2:54 a.m., Anaheim Police Officer Robert Ellison responded to reports that a police helicopter had located a truck matching the description of the truck driven by Meza. Ellison drove his marked patrol car to intercept that vehicle; he was accompanied by his partner Thomas Diaz.

After locating the truck, Ellison attempted to conduct a traffic enforcement stop by turning on the overhead lights, but was unsuccessful as the truck attempted to flee. Ellison activated his siren and continued to follow the truck engaging in a high speed chase. During Ellison's pursuit, the truck ran at least three red lights, drove on the wrong side of the road, and reached speeds of approximately 100 miles per hour. Ellison observed the truck exit the freeway, fail to navigate the offramp, and collide with a guardrail.

Ellison parked, got out of the patrol car, and approached the truck. Ellison saw Meza seated in the driver's seat of the truck and commanded him to get out of the truck and get on the ground. Meza did not comply.

Ellison continued to give Meza commands from the passenger side of the truck. When Meza attempted to open the driver's side door of the truck, Ellison ran around the back of the truck because he believed Meza was trying to get out of the driver's side of the truck, but the guardrail blocked the driver's side door from opening. Meza got out of the truck from the passenger's side and began running away. Ellison drew his firearm and ran after Meza. Ellison caught up to him and tackled him to the ground; once they hit the ground, Ellison posted one leg and was able to holster his firearm.

Ellison told him to put his hands behind his back; Meza did not comply. Instead, Meza pulled his arms underneath his body. Meza pulled his knees in toward his body as if he was trying to get up. Ellison crossed Meza's legs and pushed them towards his buttocks area in order to prevent Meza from trying to stand up. During the struggle, Meza kicked Ellison while Ellison was holding his feet and other officers were trying to put handcuffs on him. Ellison was able to grab hold of Meza's feet again, crossed them, and pushed them toward his buttocks area to prevent him from kicking and/or standing up.

Meanwhile, Diaz, Garden Grove Police Officer Nathaniel Cox, and Anaheim Police Officer Steven Hernandez arrived to assist Ellison's in taking Meza into custody. While Meza punched and kicked out toward the officers, Diaz "delivered a knee strike" to Meza's mid-section and Cox struck Meza in the face with a closed fist in an unsuccessful effort to gain Meza's compliance. Cox and Diaz tried to grab Meza's arms to stop his flailing and punching. Cox was able to get ahold of one of Meza's arms to stop him from striking the officers with that arm, but Meza continued to kick and punch using other parts of his body.

At some point, Hernandez punched Meza in the face three or four times to assist Diaz in applying the carotid hold. Meza had tucked his chin in a manner that prevented Diaz from being able to encircle Meza's neck with his arm. Even after Hernandez's punches, Meza did not comply with commands, but Diaz was able to get the proper position for the hold, and subdue Meza.

Cigarette cartons were found on the driver and front passenger floorboard of the truck. The gas station store was missing $1,852 worth of cigarette packs from its stock after the incident.

## PROCEDURAL HISTORY

Meza was charged in an amended information with second degree robbery (§§ 211, 212.5, subd. (c)) (count 1); misdemeanor resisting and obstructing officer (§ 148, subd. (a)(1)) (count 2); resisting and deterring an executive officer (§ 69) (count 3); and evading while driving recklessly (Veh. Code, § 2800.2) (count 4)).

The jury found him Meza guilty on counts 2, 3, and 4. After the jury was unable to reach a verdict on count 1 and the trial court declared a mistrial on that count, Meza pleaded guilty to count 1 as amended to allege grand theft in violation of section 487, subdivision (c). The trial court imposed a total prison sentence of 16 months. Meza appealed.

## DISCUSSION

### I.

#### MEZA'S CONVICTION ON COUNT 2 IS NOT REVERSIBLE AS A LESSER INCLUDED OFFENSE OF COUNT 3

Meza argues his conviction on count 2 must be reversed because it is a lesser included offense of his conviction on count 3. For the reasons we will explain, Meza's conviction on count 2 is not reversible as a lesser included offense of count 3.

"In general, a person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct. 'In California, a single act or course of conduct by a defendant can lead to convictions "of *any number* of the offenses charged." [Citations.] . . . [¶] A judicially created exception to the general rule permitting multiple convictions 'prohibits multiple convictions based on necessarily included offenses.' [Citation.] '[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.' [Citation.]" (*People v. Reed* (2006) 38 Cal.4th 1224, 1226-1227 (*Reed*).)

The Supreme Court in *Reed, supra*, 38 Cal.4th at pages 1227-1228 stated: "We have applied two tests in determining whether an uncharged offense is necessarily included within a charged offense: the 'elements' test and the 'accusatory pleading' test. Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former." (*Reed, supra*, 38 Cal.4th at pp. 1227-1228.)

In count 2, a misdemeanor, Meza was convicted of resisting a peace officer in violation of section 148, subdivision (a)(1), and in count 3 he was convicted of resisting an executive officer in violation of section 69. As acknowledged by Meza in his opening brief, the California Supreme Court in *People v. Smith* (2013) 57 Cal.4th 232, 240 (*Smith*) held: "Section 148(a)(1) is not a lesser included offense of section 69 based on the statutory elements of each crime."

Meza argues, however, his conviction on count 2 must be reversed because it is a lesser included offense of count 3 based on the accusatory pleading test. In *Smith*, the Supreme Court held the violation of section 148, subdivision (a)(1) offense in that case was a necessarily included offense of the violation of section 69 offense, as those offenses were alleged in the amended information, because that pleading alleged two

6

ways of violating section 69. (*Smith, supra*, 57 Cal.4th at p. 243.) "Where an accusatory pleading alleges both ways of violating section 69, the trial court should instruct the jury that if it finds beyond a reasonable doubt that a defendant committed either way of violating section 69, it should find the defendant guilty of that crime. If not, the jury may return a verdict on the lesser offense of section 148(a)(1) so long as there is substantial evidence to conclude that the defendant violated section 148(a)(1) without also violating section 69." (*Id.* at pp. 244-245.) Ultimately, the Supreme Court in *Smith* concluded that because the record in that case did "not reveal substantial evidence that defendant violated section 148(a)(1) without also violating section 69, the trial court was not required to instruct on section 148(a)." (*Id.* at p. 236.)

Here, we do not need to decide whether count 2 was a lesser included offense of count 3 under the accusatory pleading test because "the accusatory pleading test does not apply in deciding whether multiple conviction of charged offenses is proper." (*Reed, supra*, 38 Cal.4th at p. 1229.) In *Reed, supra*, 38 Cal.4th at page 1229, the California Supreme Court held: "In deciding whether multiple conviction is proper, a court should consider only the statutory elements. Or, as formulated in [*People v.*] *Scheidt* [(1991) 231 Cal.App.3d 162, 165-171], 'only a statutorily lesser included offense is subject to the bar against multiple convictions in the same proceeding. An offense that may be a lesser included offense because of the specific nature of the accusatory pleading is not subject to the same bar.'"

The *Reed* court explained: "The accusatory pleading test arose to ensure that defendants receive notice before they can be convicted of an uncharged crime. 'As to a lesser included offense, the required notice is given when the specific language of the accusatory pleading adequately warns the defendant that the People will seek to prove the elements of the lesser offense.' [Citation.] 'Because a defendant is entitled to notice of the charges, it makes sense to look to the accusatory pleading (as well as the elements of the crimes) in deciding whether a defendant had adequate notice of an uncharged lesser

7

offense so as to permit conviction of that uncharged offense.' [Citation.] But this purpose has no relevance to deciding whether a defendant may be convicted of multiple charged offenses. '[I]t makes no sense to look to the pleading, rather than just the legal elements, in deciding whether conviction of two charged offenses is proper. Concerns about notice are irrelevant when both offenses are separately charged.'" (*Reed, supra*, 38 Cal.4th at pp. 1229-1230.)

In his reply brief, Meza acknowledges the Supreme Court's reasoning in *Reed* and its holding that when a violation of section 148 is a lesser included offense of a violation of section 69 under the accusatory pleading test only, a defendant can properly be convicted of both offenses. He adds, however, the *Reed* court's "reasoning should be reconsidered."

Both Meza and the Attorney General acknowledge that this court is bound by the California Supreme Court's opinion in *Reed*. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Therefore, Meza's convictions on count 2 and 3 were not barred by the accusatory pleading test.

II.

THE JURY WAS PROPERLY INSTRUCTED ON COUNTS 2 AND 3.

Meza argues his convictions on counts 2 and 3 must be reversed because the jury was given instructions on those counts that were "erroneously and prejudicially limited [to] the use of unreasonable force to only officer Ellison." (Bold and some capitalization omitted.) He argues, in the alternative, his trial counsel was ineffective for not objecting to the given instructions. Meza's arguments are without merit.

"'In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case.'" (*People v. Townsel* (2016) 63 Cal.4th 25, 58.) "In considering a claim of instructional error we must first ascertain what the relevant law provides, and then determine what meaning the instruction given

8

conveys. The test is whether there is a reasonable likelihood that the jury understood the instruction in a manner that violated the defendant's rights." (*People v. Andrade* (2000) 85 Cal.App.4th 579, 585.)

Here, after the prosecution and the defense rested their case and counsel discussed jury instructions with the trial court, the trial court noted that the then-operative pleading alleged Meza committed count 2 against Ellison, Cox, and Diaz. The court asked the parties' counsel whether there was "a unanimity problem to have three named victims on one count?" The court explained: "What if some jurors think one officer was resisted but other jurors think that a different officer was resisted? Then you wouldn't have all twelve agreeing one officer was resisted. This is a problem associated with having three named victims for one act." The court further stated, "I suppose another way to do it would be to just name one officer. It doesn't do anything to punishment. I don't know what it adds. Normally, I would expect to see different counts for different victims." The prosecutor stated he was going to think about the court's concerns.

The following day, the prosecutor informed the court that the People elected to drop Cox and Diaz as victims and proposed the court permit amendment of the then-operative information by interlineation. Without objection by Meza's counsel, the information was further amended to allege Ellison as the sole victim in counts 2 and 3.

The jury was thereafter instructed with CALCRIM No. 2652 modified to state: "The defendant is charged [in Count 3] with resisting an executive officer in the performance of that officer's duty [in violation of Penal Code section 69]. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant [unlawfully] used force [or violence] to resist an executive officer; [¶] 2. When the defendant acted, the officer was performing (his) lawful duty; [¶] AND [¶] 3. When the defendant acted, (he) knew the executive officer was performing (his) duty. [¶] An *executive officer* is a government official who may use his or her own discretion in performing his or her job duties [(A *peace officer*, is an *executive officer*.] [¶] [The duties

9

of (a/an) executive officer include enforcement of state law.  [¶] [*A peace officer is not lawfully performing his or her duties if he or she is using unreasonable or excessive force in his or her duties).  Instruction 2670 explains when force is unreasonable or excessive.*]”  (Last italics added.)

The jury was instructed with the following version of CALCRIM No. 2670:  “The People have the burden of proving beyond a reasonable doubt that Robert Ellison was lawfully performing (his) duties as a peace officer.  If the People have not met this burden, you must find the defendant not guilty of resisting a peace officer and or resisting an executive officer.  A peace officer is not lawfully performing his or her duties if he or she is using unreasonable or excessive force when making or attempting to make an otherwise lawful arrest or detention).”

The version of CALCRIM No. 2670 instructed on “Use of Force” as follows:  “[Special rules control the use of force.  [¶] A peace officer may use reasonable force to arrest or detain someone, to prevent escape, to overcome resistance, or in self-defense.  [¶] [If a person knows, or reasonably should know, that a peace officer is arresting or detaining him or her, the person must not use force or any weapon to resist an officer’s use of reasonable force.]  [¶] If a peace officer uses unreasonable or excessive force while (arresting or attempting to arrest/ [or] detaining or attempting to detain) a person, that person may lawfully use reasonable force to defend himself or herself.  [¶] A person being arrested or detained uses reasonable force when he or she:  (1) uses that degree of force that he or she actually believes is reasonably necessary to protect himself or herself from the officer’s use of unreasonable or excessive force; and (2) uses no more force than a reasonable person in the same situation would believe is necessary for his or her protection.]”

The jury was instructed on count 2 with CALCRIM No. 2656, which also referenced CALCRIM No. 2670, and was modified to state:  “The defendant is charged [in Count 2] with resisting[,]/ [or] obstructing[,]/ [or] delaying) a (peace officer) in the

10

performance or attempted performance of (his) duties in violation of Penal Code section 148(a)]. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. Robert Ellison was (a peace officer) lawfully performing or attempting to perform (his) duties as a (peace officer); [¶] 2. The defendant willfully (resisted[,]/ [or] obstructed[,]/ [or] delayed) Robert Ellison in the performance or attempted performance of those duties; [¶] AND [¶] 3. When the defendant acted, (he knew, or reasonably should have known, that Robert Ellison was (a) peace officer) performing or attempting to perform (his) duties. [¶] Someone commits an act *willfully* when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage. [¶] [A person who is employed as a police officer by Anaheim Police Dept is a peace officer.] [¶] [The duties of (a/an) peace officer, include enforcement of state law.] [¶] [A peace officer is not lawfully performing his or her duties if he or she is using unreasonable or excessive force in his or her duties). Instruction 2670 explains when force is unreasonable or excessive).]"

Meza does not argue that the modified pattern CALCRIM jury instructions given to the jury on counts 2 and 3 in this case contained any inaccurate statement of law. Instead, Meza argues the given instructions were improper because a reasonable jury could have determined that Cox, Hernandez, and Diaz used unreasonable, excessive force that would have rendered Meza not guilty of counts 2 and 3 but the instructions limited "the jury's consideration of the officers' conduct to only [that of] Officer Ellison, the only officer who did not in some fashion, strike [Mesa]."

Meza does not cite any legal authority supporting his argument if Cox, Hernandez and/or Diaz used excessive force during the incident, such conduct would or should have immunized Meza from liability for committing counts 2 and 3 against Ellison only. In any event, Meza did not object to the given instructions on this or any other basis, and he did not request any modification to them in the trial court thus forfeiting his argument the instructions should have been further modified. (See *People*

11

*v. Guiuan* (1998) 18 Cal.4th 558, 570 ["'Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language'"].)

Even if Meza had not forfeited his challenge to the given instructions, his challenge fails as he does not demonstrate that the given versions of CALCRIM Nos. 2652, 2656, or 2670 contained any incorrect statement of the law, were unsupported by the evidence admitted at trial, or were otherwise set forth in a manner that would make it reasonably likely the jury would understand them in a manner that violated Meza's rights.

Meza's alternative argument he received ineffective assistance of counsel fails for the same reasons. To prevail on a claim of ineffective assistance of counsel, Meza must show both (1) his attorney's representation was deficient in that it fell below an objective standard of reasonableness under prevailing professional standards; and (2) his attorney's deficient representation subjected him to prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Cain* (1995) 10 Cal.4th 1, 28.) Prejudice means a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington, supra*, at p. 694.) A reasonable probability means a "probability sufficient to undermine confidence in the outcome." (*Ibid.*)

Meza's counsel's representation was not deficient because, as discussed *ante*, the jury instructions contained correct statements of the law. Meza has failed to cite any legal authority supporting his argument that the subject instructions should be modified when a criminal defendant is charged with violating sections 148, subdivision (a)(1), and 69 with regard to only one of several involved officers. Conspicuously absent from Meza's appellate briefs is any proposed language which he contends his trial counsel should have requested to further modify the instructions that is consistent with the law.

12

DISPOSITION

The judgment is affirmed.

MARKS, J.*

WE CONCUR:

O'LEARY, P. J.

GOETHALS, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.